UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ROSA BONDS,

                    Plaintiff,

v.                                                          2:11cv578

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration,

                    Defendant.


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Rosa Bonds ("Bonds" or "plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability insurance benefits ("DIB") under Title XVI of the Social Security Act.  The action was referred to a United States Magistrate Judge for a Report and Recommendation pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure.  Because the ALJ's finding that Bonds has no medically determinable impairment is not supported by substantial evidence, the undersigned recommends that the decision of the Commissioner be VACATED and REMANDED to the Commissioner for further analysis under the five-step review process.

## I. PROCEDURAL BACKGROUND

On July 20, 2009, Bonds filed an application for DIB, alleging that she had been disabled since July 19, 2008, due to a pinched nerve in her neck and cervical and lumbar strain. (R. 135-41, 166).    The Commissioner denied her application initially (R. 67-71), and upon reconsideration, (R. 84-90 ). Bonds requested an administrative hearing, which was conducted May 3, 2011. (R. 27-40). Prior to the hearing, Bonds amended her alleged onset date to July 20, 2009. (R. 243). Thus, the relevant period for this case is from July 20, 2009, Bonds' alleged onset date, to May 26, 2011, the date of the ALJ's decision.

Administrative Law Judge ("ALJ") James Quigley issued his opinion that plaintiff was not disabled within the meaning of the Social Security Act, and denied her claim for DIB. (R. 16-21). Bonds requested review by the Appeals Council which denied review on August 31, 2011, thereby making the ALJ's decision the final decision of the Commissioner. (R. 1-12). Pursuant to 42 U.S.C. § 405(g), on October 31, 2011, Bonds filed this action seeking judicial review of the Commissioner's final decision. (ECF No. 4). The Commissioner filed his answer on January 3, 2012. (ECF No. 6). Both parties filed cross motions for summary judgment. This case is now before the Court to resolve the pending motions.

## II. FACTUAL BACKGROUND

Bonds was 54 at the time of her hearing.  She previously worked as a cook in 2008, which required her to walk, stand, kneel, climb, grasp, reach, write, and stoop for six to eight hours per day. (R. 198-99). In her application and at the hearing, Bonds alleged she could not work due to back, neck, and right side body pain that began after she fell at work on July 19,

2

2008 – prior to her alleged onset date. [1] (R. 345). Three weeks after her fall, on August 9, 2008, Bonds visited the emergency room and was diagnosed with a cervical strain and prescribed medication. (R. 297-316). Her x-rays showed no gross abnormality, no malalignment of the vertebral column, acute compression fracture, soft tissue change or disc space narrowing. (R. 300).

Bonds began treatment on September 3, 2008 with Dr. J. Abbott Byrd, III, M.D., an orthopedic specialist. (R. 345). Dr. Byrd opined that Bonds had a cervical and lumbar strain with possible cervical radiculopathy. (R. 345). He prescribed Prednisone, Skelaxin, and physical therapy. (R. 345). Bonds saw Dr. Byrd again on September 17, 2008. (R. 285). She had not gone to physical therapy, but indicated that her neck and right upper extremity pain had improved. (R. 285). Her low back and lower extremity pain was worse, however, and Dr. Byrd recommended a lumbar MRI, and that she be held out of work. (R. 285). Bonds attended physical therapy from September 2008 to November 2008. (R. 260-71). She alleges that she never had an MRI because workers' compensation would not cover it. (R. 342, 349). Bonds saw Dr. Byrd again on April 6, 2009. (R. 283). He noted that she walked with a cane and had decreased sensation in her lateral right calf. (R. 283). Dr. Byrd indicated that Bonds could return to work with a ten pound weight restriction, and should follow up to re-schedule a lumbar MRI. (R. 283).

Almost a year later, on March 16, 2010, Bonds was examined by Agency DDS consulting physician, Dr. Ericka Young. (R. 444-49). Dr. Young reviewed Bonds' orthopaedic

---

[1] Bonds' records also reflect that she underwent a laparoscopic cholecystectomy (gall bladder removal) in 2009, however, this does not appear to relate to Bonds' alleged impairments. (R. 399-434).

3

history and performed her own physical exam.  Her notes reflect that Bonds "has positive radicular symptoms down the right leg, headaches and some right-sided numbness in her fingers." (R. 455).  She also observed that Bonds had a slight limp to the right side, ambulated with a cane, had a "mildly abnormal heel-to-knee test," was unable to stand on her toes or heels due to pain and had trouble standing on her right leg only.  Her range of motion, however, was entirely normal. (R. 446).  Dr. Young diagnosed Bonds with degenerative disc disease of the cervical spine with cervical and lumbar strain, and assessed her residual functional capacity ("RFC") with suggested physical limitations. (R. 447).  On March 19, 2010, DDS consulting physician, Dr. Leopold Moreno also reviewed Bonds' medical records and Dr. Young's opinion. (R. 45-48).  Dr. Moreno also opined that Bonds' spine disorder constituted a medically determinable impairment considered "severe" for purposes of the DIB analysis. (R. 46).  Dr. Moreno also agreed with the light RFC restrictions suggested by Dr. Young, though he did not concur with limiting Bonds to four hours walking or five hours sitting in an eight-hour workday because "[t]he evidence shows no significant abnormalities." (R. 47).  Dr. Carolina Longa, a third DDS consultant reviewed Bonds' medical records on May 24, 2012. (R. 55-66).  She concurred with the two prior opinions that Bonds' spine disorder was a medically determinable impairment. (R. 61).  Based on these three DDS opinions, the Social Security Administration found that, although Bonds had some restrictions, she was able to perform her past relevant work as a cashier, and was therefore not disabled. (R. 67-68).

Separately from her agency evaluations, on May 24, 2010, Bonds saw nurse practitioner, Lauren Gillis, at Virginia Beach Family Medical Center for pain on the right side of her body. (R. 475).  Bonds brought her records from Dr. Byrd that indicated she was cleared for work, and

stated that she was seeking a second opinion because she felt that her condition had worsened and she was unable to work. (R. 475). She was assessed as having joint pain, and advised to continue with her over-the-counter medication. (R. 475). On August 3, 2010 Bonds drove herself to the emergency room at Mary Immaculate Hospital for neck, hip, and leg pain. (R. 468-74). Notes reflect that Bonds stated to the staff: "I got to go somewhere and complain about this pain until my disability comes through. I'm hurting." (R. 472). Her physical exam by a Physician's Assistant revealed no tenderness palpation, a normal gait and normal range of motion in all extremities. (R. 470). She was diagnosed with chronic pain, prescribed Ultram, and discharged. (R. 472). Bonds returned to Virginia Beach Family Medical Center on September 28, 2010 and saw Dr. Aladee Delahoussaye. (R. 453). Dr. Delahoussaye's notes reflect that "[Bonds] does not feel she can work anymore, but cannot explain to me why. She reports pain on the full right side of her body, but appears comfortable." (R. 453). After conducting a general physical examination and blood tests, Dr. Delahoussaye reported that "patient is advised that I do not see any reason why she cannot hold a job at this time." (R. 454).

On October 28, 2010, Bonds saw nurse practitioner, Vanessa Fowlkes at Bon Secours.[2] (R. 461-63). Nurse Fowlkes' examination revealed swelling in Bonds' right leg, difficulty going from standing to sitting, a stiff gait and pain on palpitation. She diagnosed her with myalgia and myositis and prescribed Paxil. (R. 461-62). Bonds visited the emergency room of Sentara Leigh Hospital on April 11, 2011 complaining of swelling on her right side. (R. 477-97). She saw a

---

[2] The ALJ disregarded Fowlkes' opinion because she is a nurse practitioner, and "[a] nurse practitioner is not considered an acceptable medical source." (R. 20). This determination, however, does not impact the undersigned's analysis in this Report and Recommendation.

resident, Dr. Henry Wong, who diagnosed her with mild swelling and edema. (R. 482). Her physical exam that day revealed a normal range of motion but mild swelling on her right side from mid-thigh to mid-calf, and tenderness in this same area. Dr. Wong prescribed Ultram, and notes reflect that based on Bond's overall presentation, clinical appearance, and test results, the doctor "felt comfortable discharging her." (R. 479).

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).[3] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is

---

[3] "The issue . . . therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)).

disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for disability insurance benefits under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

The Social Security Regulations define "disability" as the:

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The

Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1.    Is the individual involved in substantial gainful activity?

2.    Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3.    Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4.    Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5.    Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). "When proceeding through this five step analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age, and work experience." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

## A.   ALJ's Decision

In this case, the ALJ made the following findings under the five part analysis:  (1) The ALJ found that Bonds had not engaged in substantial gainful activity since July 19, 2008 (prior to the alleged onset date); and (2) there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment (20 CFR §404.1520(c)). Because Bonds failed to meet step two of the five part analysis, the ALJ did not further evaluate Bonds' claim.  See 20 C.F.R. §§ 404.1520 and 416.920.  Instead, the ALJ concluded that, after failing step two, Bonds was not disabled.  (R. 21).  The ALJ essentially determined that there was no evidence of an impairment beyond Bonds' own description of her pain.  (R. 20-21).  As a result he did not proceed to evaluate whether any of Bonds' alleged impairments were severe, or the degree to which her residual functional capacity would permit her to work.  He afforded slight evidentiary weight to the opinion of consultative examiner, Dr. Young because "Dr. Young failed to provide evidence to support her diagnosis of degenerative disc disease of the cervical spine with cervical and lumbar strain." (R. 20).    The ALJ also afforded slight evidentiary weight to the entire DDS assessment that Bonds had a medically determinable impairment because "no reference is made to an objective finding pinpointing the cause of her discomfort." (R. 21).  Finally, he disregarded medical testimony from Bonds' treating nurse practitioner because she was not an acceptable medical source. (R. 20).

## B.   The ALJ's decision that Bonds does not have a medically determinable impairment is not supported by substantial evidence.

In her Motion for Summary Judgment, Bonds alleges that the ALJ erred in finding that Bonds did not have a medically determinable impairment.  (ECF No. 11 at 8).  She claims that

his opinion rejecting virtually all the medical conclusions in the record is not supported by substantial evidence. (ECF No. 11 at 8-11). Specifically, Bonds argues that the ALJ erred in rejecting the findings of the Agency's own physicians, Dr. Young, Dr. Moreno, and Dr. Longa who all diagnosed Bonds with a medically determinable impairment of a spine disorder.[4] Id.

Under 42 U.S.C.A. § 423 (d)(5)(A) "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability...; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities." A symptom or combination of symptoms by themselves cannot establish the existence of an impairment, no matter how genuine the individual's complaints may appear to be. SSR 96-4p. "In the absence of a... 'medically determinable physical or mental impairment,' an individual must be found not disabled at step 2 of the sequential evaluation process." Id. However, "[i]n making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Commissioner of Social Security shall consider all evidence available in such individual's case record." 42 U.S.C.A. § 423 (d)(5)(B) (emphasis added).

---

[4] Bonds also references Dr. Byrd's reports and x-rays to support her position. (ECF No. 11 at 9). These evaluations occurred prior to Bonds' alleged onset date, and are therefore of limited relevance. Gullace v. Astrue, 1:11CV0755 TSE/JFA, 2012 WL 691554 (E.D. Va. Feb. 13, 2012) (citing Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1165 (9th Cir.2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance"); McCormick v. Astrue, 2010 WL 1740712, at *6 (D. Del. April 30, 2010) (rejecting an argument that the ALJ erred in failing to discuss evidence provided by a physician prior to the alleged onset date)). Because Dr. Byrd's records were evaluated by all of the Agency physicians, they are relevant to the ALJ's decision to afford those opinions only slight weight. Furthermore, because Dr. Byrd's opinion is similar to the majority of the medical opinions in this case, whether the ALJ did or did not discuss his particular assessment has little bearing on the undersigned's analysis.

Given that SSR 96-4p prohibits a finding of a medically determinable impairment based on symptoms alone, a physician's diagnosis that is based solely on Bonds' subjective complaints may be more liberally rejected. See Lipscomb v. Astrue, 2:10-CV-00326, 2011 WL 3440085, *17-20 (S.D.W. Va. May 5, 2011). In this case, it is evident that Bonds' primary symptom is her self-report of pain, and that her treating providers found few objective signs to support the severity of symptoms she described.[5] Nevertheless, Bonds underwent several diagnostic tests during each of her doctor visits.[6] She also exhibited edema and mild swelling during her April 11, 2011 examination. (R. 482).   Though her objective medical tests appear to show few abnormalities, all of the medical sources, including her medical providers and all of the Agency's own physicians, examined this objective medical evidence in conjunction with Bonds' description of her symptoms (as opposed to relying on exclusively Bonds' complaints) and concluded that Bonds had a medically determinable impairment. In fact, there is not a single medical opinion in the record that supports the ALJ's finding that Bonds has no impairment, although the physicians describing her condition ultimately concluded she was capable of working.

By independently examining the objective medical evidence, but rejecting all of the physicians' opinions contained in record, the ALJ essentially substituted his own medical opinion for those of Bonds' doctors. "It is well-settled that an ALJ should not substitute his own untrained medical opinion for that of a medical professional." Slen v. Astrue, 1:09-CV-607,

---

[5] This is reflected in her own statements as well as inconsistencies between her alleged pain and her actual ability and appearance. (R. 454, 472, 475).

[6] Bonds underwent a range of motion test, (R. 448) neurological evaluations, (R. 449, 453, 482), several general physical examinations (R. 453, 468-69, 475, 485-88 ), musculoskeletal examinations (R. 461, 482) blood tests (R. 455-458; 463-67), and a peripheral vascular laboratory test (R. 495).

2010 WL 2640297 (E.D. Va. June 30, 2010). See Wilson v. Heckler, 743 F.2d 218, 221 (4th Cir.1984) ("In finding that [the doctor's] clinical findings did not support his conclusions as to plaintiff's functional limitations, the ALJ erroneously exercised an expertise he did not possess in the field of orthopedic medicine.").

The ALJ is permitted to weigh doctors' opinions and assess credibility, however, his discretion does not extend to completely rejecting all medical conclusions and inserting his own. See Suarez v. Sec'y of Health & Human Services, 740 F.2d 1, 1 (1st Cir. 1984) ("The ALJ, although empowered to make credibility determinations and to resolve conflicting evidence, was not at liberty simply to ignore uncontroverted medical reports.") (citations omitted). Although the physicians examining Bonds unanimously concluded she retained some ability to work, they differed in the degree of her retained functional capacity. The ALJ was free to determine Bonds' RFC, based on his own assessment of these medical opinions, but no medical opinion in the record concludes that Bonds has no medically determinable impairment. Moreover, though the ALJ may not agree with the medical opinions, they were based, in part, on objective medical evidence also found in the record, and not exclusively on Bonds' subjective complaints as the ALJ concluded. Therefore, the ALJ's decision that Bonds does not have a medically determinable impairment is not supported by substantial evidence.

Whether Bonds is ultimately found to be disabled remains for the ALJ to determine. Zietz v. Sec. of Health & Human Servs., 726 F. Supp. 343, 349 (D. Mass. 1989) (finding that ALJ's Step 2 determination required remand to determine "when or whether [the] impairment rendered her disabled during the period in question"). Indeed, from the impairments found by her treating physicians and Agency consultants it seems likely Bonds would be capable of

12

performing some work. This decision, however, is not for the Court to make but is reserved to the ALJ. The undersigned therefore recommends that the case be remanded for the ALJ to apply the five-step analysis. See Dow v. Astrue, 2:10-CV-126, 2011 WL 3739412 (D. Vt. Aug. 4, 2011) (remanding after Step 2 finding by ALJ was not supported by substantial evidence).

## V.  RECOMMENDATION

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be VACATED and REMANDED for further proceedings consistent with this Report and Recommendation.

## VI.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.     Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.     A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

13

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

August 22, 2012

14

## <u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Robert Wayne Gillikin, II
Rutter Mills LLP
160 W Brambleton Ave
Norfolk, VA 23510

Lawrence Richard Leonard
United States Attorney Office
101 W Main St
Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

_____
               Deputy Clerk

_____, 2012